# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ZAMONT BRANTON,**

      **Petitioner,**

**v.**                                           **Case No. 8:12-cv-2713-T-27AEP**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

## ORDER

    Petitioner Zamont Branton, an inmate in the Florida Department of Corrections proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1). He challenges his convictions entered by the Circuit Court for the Thirteenth Judicial Circuit, Hillsborough County, Florida, in 2005. Respondent filed a response (Dkt. 6), and Petitioner filed a reply (Dkt. 13). Upon review, the petition must be denied.

### Procedural History

    A jury convicted Petitioner of carjacking with a firearm and robbery with a firearm. (Dkt. 9, Ex. 1, Vol. II, p. 241.) He was sentenced to concurrent terms of life imprisonment. (Id., pp. 246-49.) The state appellate court *per curiam* affirmed his convictions and sentences. (Dkt. 9, Ex. 5.)

    Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Dkt. 9, Ex. 9.) The state court summarily denied some of his claims and conducted an evidentiary hearing on the remaining claims. (Dkt. 9, Exs. 10, 12, 13.) After the hearing, it entered a final order denying his motion. (Dkt. 9, Ex. 14.) The state appellate court reversed the summary

denial of four claims of ineffective assistance of counsel for failing to investigate or call witnesses, and remanded for an evidentiary hearing. *Branton v. State*, 24 So.3d 1224 (Fla. 2d DCA 2009). The appellate court affirmed, without discussion, the denial of all other claims raised by Petitioner. *Id.* After holding an evidentiary hearing, the state court again denied the claims. (Dkt. 9, Exs. 22, 23.) The state appellate court *per curiam* affirmed the denial. (Dkt. 9, Ex. 26.) Respondent does not contest the timeliness of the federal habeas petition.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court

to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."

*Cone*, 535 U.S. at 693.  In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010).  *See also Cullen v. Pinholster*, _U.S._, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

The denial of Petitioner's postconviction claims was affirmed without comment or discussion in multiple decisions of the state appellate court.  These decisions warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby,* 538 U.S. 906 (2003).  *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Petitioner bears the burden of overcoming by clear and convincing evidence a state court's factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Review of the state court decision is limited to the record that was before the state court.  *Pinholster,* 131 S. Ct. at 1398.

## DISCUSSION

**Ground One: Ineffective Assistance of Trial Counsel**

*A.        Procedurally Defaulted Sub-claims: (A)(5), (B), (C), and (D)*

In Ground One, Petitioner raises eleven sub-claims of ineffective assistance of trial counsel. The sub-claims are identified as (A)(1) through (A)(6), and (B) through (F).  Respondent contends that sub-claims (A)(5) and (B) through (F) are procedurally defaulted and thus barred from federal habeas review.

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").  *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted).  A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary."  *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has

the right under the law of the State to raise, by any available procedure, the question presented."

*Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court

extends to both the broad legal theory of relief and the specific factual contention that supports relief.

*Kelley v. Sec'y, Dep't of Corr*., 377 F.3d 1317, 1344 (11th Cir. 2004). The requirement of

exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly

presents" his claim in each appropriate state court and alerts that court to the federal nature of the

claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state

remedies that are no longer available, that failure is a procedural default which will bar federal

habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice

exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

To establish cause for a procedural default, a petitioner "must demonstrate that some

objective factor external to the defense impeded the effort to raise the claim properly in state court."

*Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478

(1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created

the possibility of prejudice but that they worked to his actual and substantial disadvantage and

infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S.

152, 170 (1982). The petitioner must show at least a reasonable probability of a different outcome.

*Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim

if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529

U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in

an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Sub-claims (A)(5), (B), (C), and (D) of Ground One of the federal habeas petition are unexhausted.  In sub-claim (A)(5), Petitioner argues counsel was ineffective for failing to conduct an adequate deposition of Officer Yaksic[1] of the Tampa Police Department.  In sub-claim (B), he argues that counsel was ineffective for failing to move to suppress a photopack shown to the victim in making an out-of-court identification of Petitioner.  In sub-claim (C), Petitioner asserts that counsel was ineffective for not objecting to a sleeping juror.  In sub-claim(D), Petitioner argues that counsel was ineffective for erroneously advising him whether to testify at trial.

When Petitioner raised these claims in his postconviction motion, the state court denied them following an evidentiary hearing.  (Dkt. 9, Exs. 13, 14.)  Petitioner did not brief these claims on collateral appeal. (Dkt. 9, Ex. 15.)  Florida procedural rules governing collateral appeals require briefing when a Rule 3.850 postconviction motion is denied following an evidentiary hearing.  *See* Fla. R. App. P. 9.141(b)(3)(C).  *See also Cunningham v. State*, 131 So.3d 793, 794 (Fla. 2d DCA 2012).  Failure to brief a claim results in its abandonment.  *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (stating that exhaustion of a claim raised in a Rule 3.850 motion includes an appeal from the denial of the motion).  Petitioner therefore failed to invoke one full round of the state's established appellate review process with regard to these claims.  *See Pruitt*, 348 F.3d at 1358-59.

Petitioner cannot return to state court and file an untimely collateral appeal challenging the

---

[1] The state court record contains numerous spellings of this individual's name, as well as the names of Petitioner's co-defendants and some witnesses.

denial of these claims.  *See* Fla. R. Crim. P. 3.850(k).  Consequently, the arguments presented in sub-claims (A)(5), (B), (C), and (D) are procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  Petitioner does not establish that either the cause and prejudice[2] or fundamental miscarriage of justice exception applies to overcome the default.  Accordingly, they are barred from federal habeas review.

B.      *Exhausted Sub-claims: (A)(1) - (A)(4), (A)(6), (E), and (F)*

The remaining sub-claims of Ground One are exhausted.[3]  Petitioner argues that trial counsel provided ineffective assistance, thereby resulting in deprivations of due process and a fair trial.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en

---

[2]In his reply, Petitioner appears to assert that the cause and prejudice exception applies because his postconviction appellate counsel was ineffective for not raising the denial of these claims.  In support, he cites *Martinez v. Ryan*, __U.S.__, 132 S.Ct. 1309 (2012).  *Martinez* recognized a narrow exception to the general rule that ineffective assistance of postconviction counsel cannot constitute cause to overcome a procedural default.  However, the *Martinez* exception only applies to defaulted claims of ineffective assistance of trial counsel that were not raised in an "initial-review collateral proceeding":

> Importantly, the *Martinez* rule is expressly limited to attorney errors in initial-review collateral proceedings: "[T]he holding in *[Martinez]* does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts."

*Lambrix v. Sec'y, Florida Dep't of Corr.*, 756 F.3d 1246, 1260 (11th Cir.) *cert. denied sub nom. Lambrix v. Crews*, __U.S.__, 135 S. Ct. 64 (2014) and *cert. denied sub nom. Lambrix v. Jones*, __U.S.__, 135 S. Ct. 1894 (2015) (quoting *Martinez*, 132 S.Ct. at 1320).

Martinez further stated that its holding "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial." 132 S.Ct. at 1320.  Accordingly, *Martinez* does not extend to allegations that collateral appellate counsel was ineffective for failing to raise a claim on appeal from the initial-review collateral proceeding.  *See also Wallace v. Sexton*, 570 F. App'x 443, 453 (6th Cir. 2014); *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012); *Chenault v. Sec'y, Dep't of Corr.*, 2014 WL 2548131, at *5 (M.D. Fla. 2014).  Petitioner therefore fails to show cause for the default of his claims.

[3] Respondent contends that sub-claims (E) and (F) of Ground One are not exhausted because Petitioner did not brief the arguments raised therein on collateral appeal.  However, the state postconviction court summarily denied these claims prior to the evidentiary hearing.  As Petitioner's collateral appeal of the denial of these summarily denied claims was briefed and decided in 2009, it appears that the Second District Court of Appeal reviewed the claims in accordance with its procedures at that time.  *See Bucklon v. Sec'y, Florida Dep't of Corr.*, 606 Fed. App'x 490, 492-93 (11th Cir. 2015) (citing *Cunningham*, 131 So.3d 793).  Accordingly, these grounds are considered exhausted and are reviewed on their merits.  Respondent agrees that sub-claims (A)(1) through (A)(4) and (A)(6) are exhausted.

banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  Claims of ineffective assistance

of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well
> documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed.
> 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective
> assistance of counsel claims.  According to *Strickland*, first, the defendant must show
> that counsel's performance was deficient.  This requires showing that counsel made
> errors so serious that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment.  Second, the defendant must show that the
> deficient performance prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial, a trial whose result
> is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).  In order to show deficient performance,

a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions

[of counsel] were outside the wide range of professionally competent assistance."  *Strickland*, 466

U.S. at 690.  However, "counsel is strongly presumed to have rendered adequate assistance and made

all significant decisions in the exercise of reasonable professional judgment."  *Id.*  Additionally, "a

court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged

conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.*

Petitioner must demonstrate that counsel's alleged error prejudiced the defense because "[a]n

error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment

of a criminal proceeding if the error had no effect on the judgment."  *Id.* at 691-92.  To show

prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.  A reasonable

probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

Counsel's strategic choices "made after thorough investigation of law and facts relevant to

plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying

*Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

**Factual Background**[4]

Aaron James sold clothing out of his car.  Petitioner's co-defendants, Derek Moultrie and Daniel Pressley, met James on August 21, 2003.  They bought some clothes from him and agreed to follow up.  On the date of the offenses, August 23, 2003, one of the co-defendants called James about buying more clothes.  They agreed to meet about three hours later at a Miami Subs parking lot in Tampa, Florida.

According to James' testimony, Moultrie, Pressley, and Petitioner, along with another unidentified man, met James at the agreed-upon location that day.  Pressley and Petitioner rode together in one car, and Moultrie and the other man were in a second car.  After all of the men looked at the clothes for about ten minutes, Pressley went to his car and returned with a gun, which he pointed at James.  All four men gathered around James, who was forced to get on his knees.  Pressley took James' wallet and car keys.  James did not recall the men talking to each other.  Pressley gave the keys to Petitioner, who drove away in James' car.  The other men left in the cars they drove to the parking lot.  James made out-of-court and in-court identifications of Petitioner.

Petitioner presented the defenses of alibi and misidentification.  He asserted that he was at Busch Gardens when the offenses were committed.  At trial, he called his girlfriend, Chanel Wilson, and Wilson's friend, Lequisha Jefferson.  Jefferson testified that as an employee of Busch Gardens during the summer of 2003, she received six complimentary tickets for admission.  She also obtained two such tickets from another employee she knew, Tony Henry.  Jefferson testified that she gave Petitioner and Wilson the two tickets she obtained from Henry.  She stated that the tickets expired

---

[4] This factual summary is derived from the appellate briefs and the evidence presented at trial.

on August 23, 2003, the day of the offenses.  On that date, Jefferson picked up Wilson at about 12:30

and then picked up Petitioner ten or fifteen minutes later.  She left Wilson and Petitioner at a

McDonald's across the street from Busch Gardens, and picked them up at the same McDonald's at

about 6:30 before dropping them off at their residences.  Wilson testified that Petitioner was in her

presence on August 23, 2003, from 12:30 to 6:30.  Wilson and Jefferson indicated that the tickets'

August 23, 2003 expiration date assisted them in remembering that the Busch Gardens trip was on

that date because it was the last day to use the tickets.

**Ground One(A)(1) and Ground One(A)(6)**:

In Ground One(A)(1), Petitioner claims that counsel was ineffective for not interviewing and

calling as a witness Moultrie's fiancee, Aubrey Wright.  In Ground One(A)(6), he claims counsel

was ineffective for not calling as a witness Quantavia Ponder.  Petitioner appears to assert that

Wright and Ponder rode to the Miami Subs parking lot in one of the perpetrators' cars and were

present or nearby when the crimes occurred.

Initially, the state postconviction court summarily denied these claims.  However, the state

appellate court remanded for an evidentiary hearing.  *Branton*, 24 So.3d 1224.  At the evidentiary

hearing, Petitioner testified that Wright saw the offenses and would have testified that Petitioner was

not involved.  (Dkt. 9, Ex. 22, p. 82.)  Petitioner was aware that Wright previously made statements

incriminating him, but believed that Wright would have testified that Moultrie forced her to

implicate Petitioner.  (Id., p. 83.)   This belief was based on "something [Petitioner] heard."  (Id., p.

84.) Petitioner also testified that he informed counsel Wright's testimony would have excluded him

as one of the involved individuals.  (Id., p. 86.)  Similarly, Petitioner believed that Ponder would

have testified Petitioner was not involved in the offenses.  (Id., p. 92.)  He stated that he told counsel

about Ponder.  (Id.)  Petitioner further testified that even though he believed Ponder previously identified him as a participant in the offenses, he thought she would testify at trial that Moultrie threatened her to do so.  (Id.)

Counsel testified at the evidentiary hearing that he took Wright's deposition, during which she identified Petitioner as one of the suspects.  (Id., p. 98.)  He testified that Wright never recanted this statement or said anything inconsistent with it during her deposition.  (Id.)  Counsel's testimony further reflects that Petitioner never informed him or his investigator that Wright's identification was made under a threat, or that she was prepared to change her testimony.  (Id., p. 99.)  Moreover, even if she had been willing to provide favorable testimony, counsel told the court, he thought "the damage of calling her would have outweighed any benefit that she could have given, because she had previously given a statement that implicated Mr. Branton, and that of course would have been admissible as [an] inconsistent statement."  (Id.)[5]  He did not believe the jury would have found her to be credible.  (Id., p. 113.)

Counsel also testified that Ponder stated in her deposition that she would not recognize Petitioner if she saw him, but that she did not exclude Petitioner as one of the suspects.  (Id., p. 103.) Counsel further testified that he did not recall Petitioner telling him that Ponder would have changed her statement or that she had been threatened to make any previous statements.  (Id., p. 104.)  He stated that it "would have been very dangerous to call her and attempt to convince a jury that she was not changing her statement."  (Id.)  Counsel further testified that he would not risk showing her a photograph, only to have her make a positive identification of Petitioner.  (Id., pp. 108.)

Following the evidentiary hearing, the state court denied Petitioner's claim regarding Aubrey

---

[5] A witness may be impeached with her prior inconsistent statements.  § 90.608(1), Fla. Stat.

Wright:

>After reviewing claim one (a), the testimony, evidence, and argument presented at the evidentiary hearing, the court file and the record, the Court finds [counsel's] testimony to be more credible than Defendant's testimony.  Therefore, according to [counsel's] testimony, the Court finds Defendant did not tell counsel Aubrey Wright intended to change her testimony.  Furthermore, the Court finds Defendant has failed to meet his burden as he did not present Ms. Wright to testify under oath at the evidentiary hearing, and the alleged substance of her testimony was known to Defendant only through hearsay statements – not personal knowledge.  Consequently, Defendant has failed to demonstrate the substance of Ms. Wright's testimony and that it would have changed the outcome of his trial.  Therefore, because the Court finds Defendant has failed to meet his burden, the Court finds Defendant is not entitled to relief on claim one (a).  **As such, claim one (a) is denied.**

(Dkt. 9, Ex. 23, pp. 60-61) (court's record citation omitted) (emphasis in original).

The state court also denied Petitioner's claim concerning Quantavia Ponder:

>After reviewing claim one (d), the testimony, evidence, and argument presented at the evidentiary hearing, the Court file and the record, the Court finds [counsel's] testimony to be more credible than Defendant's testimony.  Therefore, according to [counsel's] testimony, the Court finds [counsel] decided, as a matter of strategy, not to pursue whether Ms. Ponder could exclude Defendant because he did not want to take the risk that she would positively identify Defendant and make the defense of misidentification more difficult to present.  Ms. Ponder's deposition testimony was that she would not recognize Defendant if she saw him, and counsel did not want to risk her being about to testify that she saw Defendant at the scene.  Therefore, the Court finds counsel cannot be held ineffective for this strategic decision.  *See Hannon*, 941 So.2d at 1121; *Occhicone v. State*, 768 So.2d at 1048.  Additionally, Defendant has not presented any evidence to demonstrate that Ms. Ponder would have testified that Defendant was not at the scene, and therefore, Defendant has not met his burden.  Because Defendant has not demonstrated prejudice and because counsel's decision was based on strategy, the Court finds Defendant is not entitled to relief on claim one (d).  **Therefore, claim one (d) is denied.**

(Id., p. 72) (court's record citations omitted) (emphasis in original).

The state court's finding that counsel's testimony was credible is presumed correct. *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility

determination and thus credit [the attorney's] testimony over [the petitioner's].""), *cert. denied*, 526

U.S. 1047 (1999); *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court

concerning historical facts and assessments of witness credibility are . . . entitled to the same

presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161

(1995).  *See also Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011)

("Determining the credibility of witnesses is the province and function of state courts, not a federal

court engaging in habeas review.  Federal habeas courts have 'no license to redetermine credibility

of witnesses whose demeanor was observed by the state trial court, but not by them.'") (quoting

*Marshall v. Lonberger*, 459 U.S. 422 (1983)).

Petitioner does not overcome this presumption.  Nor does he establish that, under the

circumstances to which counsel testified, counsel performed deficiently by not interviewing or

calling either witness.  Additionally, the state court specifically determined that counsel made a

strategic decision not to call Ponder.  Counsel's strategic choices "made after thorough investigation

of law and facts relevant to plausible options are virtually unchallengeable."  *Strickland*, 466 U.S.

at 690.  "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic

decision, and it is one [a reviewing court] will seldom, if ever, second guess."  *Waters*, 46 F.3d at

1512.

Furthermore, Petitioner does not present any evidence to support his contention that Wright

or Ponder would have testified as he theorizes.  *See United States v. Ashimi*, 932 F.2d 643, 650 (7th

Cir. 1991) ("[E]vidence about the testimony of a putative witness must generally be presented in the

form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the

testimony would have been favorable; self-serving speculation will not sustain an ineffective

assistance claim.") (footnotes omitted).  Consequently, his claims are too speculative to warrant relief.  *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful.  This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir.1985)).  *See also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).

Accordingly, Petitioner does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claims.  Neither Ground One(A)(1) nor Ground One(A)(6) provides relief.

**Ground One(A)(2)**:

Petitioner argues that counsel should have interviewed and called as witness co-defendant Pressley. The record indicates that Pressley was convicted in connection with these offenses prior to Petitioner's trial. The state court conducted an evidentiary hearing on this claim after its initial summary denial of the claim was reversed on appeal.  *Branton*, 24 So.3d 1224.  At the evidentiary hearing, Petitioner testified that he advised counsel Pressley would testify that Petitioner was not present during the offenses. (Dkt. 9, Ex. 22, pp. 86-88.)  Petitioner's testimony further indicates that Pressley would have stated he was at Petitioner's house when  Petitioner, Wilson, and Jefferson left to go to Busch Gardens.  (Id., p. 87.)  Petitioner also argued in his postconviction motion that Pressley would have testified that a person named Joshua, who resembled Petitioner, was present during the offenses.  (Dkt. 9, Ex. 9, p. 178.)

Counsel testified that he attempted to take Pressley's deposition, but that Pressley invoked

his Fifth Amendment privilege.   (Dkt. 9, Ex. 22, pp. 100, 117.)   Counsel stated that Pressley

previously gave two tape-recorded statements identifying Petitioner as a participant in the offenses.

(Id., pp. 101, 117-18.)   Therefore, counsel stated, these prior statements would have been placed

before the jury had Pressley testified differently at trial.  (Id., pp. 101, 118.)  Counsel denied that

Petitioner ever informed him that Pressley could have testified that Joshua, not Petitioner, was

present.  (Id., p. 102.)

The state court rejected this claim:

> After reviewing claim one (b), the testimony, evidence, and argument
> presented at the evidentiary hearing, the Court file and the record, the Court finds
> [counsel's] testimony to be more credible than Defendant's testimony.   Therefore,
> according to [counsel's] testimony, the Court finds [counsel] attempted to take Mr.
> Pressley's deposition, but Mr. Pressley's attorney advised him to invoke his Fifth
> Amendment right and remain silent.  Additionally, the court finds [counsel] reviewed
> Mr. Pressley's statements to police, in which he identifies Defendant twice, and made
> a strategic decision that those previous statements, regardless of his trial testimony,
> would be admissible and damaging to Defendant.  Further, the Court finds Defendant
> never advised Defendant [sic] about a similar looking man named Joshua, despite the
> fact that the defense theory was misidentification.   Because the Court finds
> Defendant did not provide information about Joshua and counsel made a strategic
> decision not to call Mr. Pressley in light of his previous incriminating statements, the
> Court finds Defendant has failed to demonstrate that counsel performed deficiently.
> *See Hannon v. State*, 941 So.2d 1109, 1121 (Fla. 2006) (stating that a defendant has
> not met the first Strickland prong if the court finds that counsel's decisions were
> based on a carefully considered trial strategy); *Occhicone v. State*, 768 So.2d 1037,
> 1048 (Fla. 2000) (stating that counsel's strategic decisions do not constitute
> ineffective assistance if they are reasonable and other alternatives were considered).
> **Therefore, claim one (b) is denied**.

(Dkt. 9, Ex. 23, pp. 65-66) (court's record citations omitted) (emphasis in original).

The state court's credibility finding is presumed correct. *Baldwin*, 152 F.3d at 1316; *Devier*,

3 F.3d at 1456.   Petitioner presents no evidence to overcome this presumption.[6]   Additionally, the

---

[6] Petitioner makes a conclusory allegation in his habeas petition that counsel's claim that Pressley invoked his
Fifth Amendment privilege during his deposition "is not true." (Dkt. 1, p. 10.) However, he presents no evidence to

court found that counsel's decision not to call Pressley was a strategic one.  The record reflects that this decision was made after considering the potential downside to calling Pressley. Given the circumstances set forth in counsel's evidentiary hearing testimony, Petitioner does not establish deficient performance. *See Strickland*, 466 U.S. at 690; *Waters*, 46 F.3d at 1512.  Additionally, Petitioner does not offer any evidence establishing the information to which Pressley would have testified. *See Ashimi*, 932 F.2d at 650.  His speculative claim cannot provide federal habeas relief. *See Johnson*, 256 F.3d at 1187; *Tejada*, 941 F.2d at 1559.  Petitioner does not show that the state court's determination was an unreasonable application of *Strickland*, or was based on an unreasonable determination of the facts.  Consequently, he is not entitled to relief on Ground One(A)(2).

**Ground One(A)(3)**:

Petitioner argues that counsel should have interviewed and called as a witness Trevior Daniels.  The state court summarily denied this claim.  The state appellate court reversed, directing that an evidentiary hearing be conducted. *Branton*,  24 So.3d 1224.  At the evidentiary hearing, Petitioner testified that Daniels, who was deceased by the time of the hearing, would have testified that he talked to Petitioner at the McDonald's across the street from Busch Gardens at about 6:15 on the day of the crimes.  (Dkt. 9, Ex. 22, p. 89.)  Therefore, Petitioner testified, Daniels would have supported the alibi defense presented by Wilson and Jefferson.  (Id., p. 90.)  He testified that he informed counsel about Daniels.  (Id., p. 89.)

Counsel testified that he had no independent recollection, nor did his notes reveal, that Petitioner ever informed him or his investigator of Daniels.  (Id., p. 102.)  Counsel further testified

---

support this contention.

that he did not recognize the name, and that there was no other information in the case that would have led him to investigate Daniels. (Id.) The state court denied this claim:

> After reviewing claim one (c), the testimony, evidence and argument presented at the evidentiary hearing, the court file and the record, the Court finds [counsel's] testimony to be more credible than Defendant's testimony. Therefore, according to [counsel's] testimony, the Court finds Defendant never gave him the name of Trevior Daniels as a possible witness for the defense. Because Defendant did not inform [counsel] of Trevior Daniels and counsel had no other reason to know of this witness, counsel cannot be held ineffective for failing to call Trevior Daniels at trial. Therefore, the Court finds Defendant has failed to demonstrate counsel acted deficiently. *See Strickland*, 466 U.S. at 686-87. **Therefore, claim one (c) is denied.**

(Dkt. 9, Ex. 23, p. 68) (court's record citation omitted) (emphasis in original).

Counsel testified that he was completely unaware of Daniels, and had no reason to know of him based on the investigation that he performed. Deference must be given to the court's finding that this testimony was credible. *Baldwin*, 152 F.3d at 1316; *Devier*, 3 F.3d at 1456. Petitioner presents no evidence to overcome the presumption of correctness.[7] Under these circumstances, Petitioner does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in concluding that counsel did not perform deficiently.[8] He is not entitled to relief on Ground One(A)(3).

**Ground One(A)(4)**:

Petitioner argues that counsel was ineffective for failing to interview and call Antonio Henry to testify at trial. Jefferson testified at trial that she received six complimentary tickets to Busch

---

[7] Additionally, Petitioner presents no evidence that, before his death, Daniels made any statements consistent with the testimony Petitioner claims he would have provided at trial. *See Ashimi*, 932 F.2d at 650.

[8] Although Petitioner claims that Daniels' anticipated testimony would have supported his alibi defense by establishing Petitioner was at McDonald's at about 6:15, it is noted that James did not testify at what time on August 23, 2003, the offenses occurred. (Dkt. 9, Ex. 2, Vol. II, pp. 134-206.) He only testified that it was during the evening hours that he first met Moultrie and Pressley several days earlier, on August 21, 2003. (Id., p. 152.)

Gardens and also received two such tickets from another employee who she knew as Tony Henry. She testified that she gave Henry's tickets to Petitioner and Wilson, and that the tickets expired on August 23, 2003.

In rebuttal, the State called James Ragsdale, the control and administration manager at Busch Gardens. He testified that every complimentary ticket given to an employee in 2003 expired on December 31, 2003. Ragsdale further testified that no record was found of an employee named Tony Henry or Anthony Henry. He stated that, even assuming the reason he did not locate any records was that the employee actually had a different name, complimentary tickets given to any employee would have expired on December 31, 2003. Petitioner claims, however, that Henry's testimony would have established that the tickets he gave to Jefferson, which Petitioner and Wilson used, "were not the kind of tickets that . . . Ragsdale testified about." (Dkt. 1, p. 10.)

The state court conducted an evidentiary hearing on this claim when Petitioner raised it in his postconviction motion. Petitioner testified that the tickets from Henry, about whom he informed counsel, were "promotional" tickets. (Dkt. 9, Ex. 13, pp. 715, 717.) Counsel testified that he believed he actually learned about this potential witness from Lequisha Jefferson, who informed him that she received complimentary passes from a person she identified only as Tony Henry. (Id., p. 738.) Counsel further testified that he could not locate Tony Henry. (Id., p. 753.) Following the evidentiary hearing, the state court denied this claim:

> As to Antonio Henry, Defendant contends his testimony would have revealed that he gave Defendant promotional tickets to Busch Gardens, which expired on August 23, 2003. Defendant argues that this testimony would have refuted the testimony of the State's rebuttal witness, Jim Ragsdale, who testified that Busch Gardens didn't issue complimentary tickets with expiration dates to employees. However, at the evidentiary hearing, the Defendant failed to call Antonio Henry to offer his testimony. The Court notes that an allegation of ineffective assistance of

counsel for failure to call a witness will fail where the defendant does not present any evidence at the evidentiary hearing from witnesses he claimed would be helpful. *See Gore v. State*, 846 So.2d 461, 469-470 (Fla. 2003). The substance of such witnesses' testimony is a fact-based issue that requires development, and thus a defendant effectively waives his allegation by failing to present evidence when given the opportunity to do so. *See Ferrell v. State*, 918 So.2d 163, 173 (Fla. 2005). As Defendant failed to call Henry as a witness, this portion of Defendant's ground one is denied.

(Dkt. 9, Ex. 14, pp. 656-57.)

As the state court noted, Petitioner does not present any evidence that Henry would have testified his tickets were a different type of "promotional" ticket that expired on August 23, 2003. *See Ashimi*, 932 F.2d at 650. Furthermore, Jefferson testified on cross-examination that the tickets she received from Henry were the same type of complimentary tickets that she received as a Busch Gardens employee. (Dkt. 9, Ex. 2, Vol. III, p. 248.) It was this type of complimentary ticket that Ragsdale said would not have expired until December 31, 2003. (Id., pp. 279-80.) Accordingly, Petitioner's claim is too speculative to warrant federal habeas relief. *See Johnson*, 256 F.3d at 1187; *Tejada*, 941 F.2d at 1559.

Accordingly, Petitioner does not demonstrate ineffective assistance of counsel. He cannot show that the state court's decision was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. Ground One(A)(4) warrants no relief.

**Ground One(E)**:

Petitioner argues that counsel was ineffective for advising him to reject a plea offer of fifteen years in prison because he would be acquitted based on the alibi testimony. Petitioner further contends that, absent this misadvice, he would have accepted the plea offer. Petitioner raised this claim in his postconviction motion. The state court rejected the claim after the State filed a response

to it:

> Defendant contends that, although the State offered Defendant a fifteen (15) year prison sentence in exchange for a guilty plea, counsel advised him to reject the offer in light of the number of victims [sic] that would testify as to Defendant's alibi. Given that he was facing a life sentence, Defendant argues, "it was very unprofessional to advise" him to reject the offer.  Had counsel not so advised, Defendant argues, he would have accepted the plea.  In its Response, the State argues that Defendant's allegation is conclusively refuted by the record.  Specifically, the State, relying on the trial transcript, explains that counsel advised the trial court that, in light of the State's offer, he did not believe it was in Defendant's best interest to go to trial, that Defendant had nothing to gain by going to trial, and that Defendant insisted on proceeding to trial.  The Court finds the State's Response persuasive and finds that Defendant's allegation of misadvice is conclusively refuted by the record. Accordingly, the Court finds that Defendant is not entitled to relief on ground five.

(Dkt. 9, Ex. 12, pp. 622-23) (court's record citation omitted).

The State's response referred to statements made prior to trial when the State informed the

trial court that Petitioner still faced a different charge carrying a possible fifteen-year prison term:

| THE COURT: | [Counsel], you want to put anything else on the record? |
|---|---|
| [COUNSEL]: | No, Your Honor, other than I have advised Mr. Branton on a number of occasions, in light of the State's offer, I didn't believe it was in his best interest to go to trial.  Even if he were successful in this trial, he would still have an exposure of 15 years on the second trial.  There is nothing to gain by going to trial.  His position has been he wants to proceed to trial. |
| THE COURT: | That's fine.  You understand what [counsel] says?  Even if you walk, you face 15 years on the second charge.  There is another case that's going to come right behind it probably; and we are going to go through that trial.  If you are found guilty, there is the 15 years very possibly.   That's the maximum.  It doesn't mean you are going to get it, but that's what you could get.  Do you understand? |
| [PETITIONER]: | Yes, ma'am. |
| THE COURT: | All right.  As long as you understand the risks. |

(Dkt. 9, Ex. 2, Vol. I, pp. 9-10.)[9]

"Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, __ U.S. __, 132 S.Ct. 1376, 1384 (2012). *See also Padilla v. Kentucky*, 559 U.S. 356, 373 (2010) ("[W]e have long recognized that the negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."). However, the state court record makes clear that counsel advised Petitioner to accept the State's plea offer but that Petitioner chose to proceed to trial. Accordingly, Petitioner does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. Ground One(E) provides no relief.

**Ground One(F)**:

Petitioner argues that counsel was ineffective for failing to move for a mistrial when "Witness Wilson testified that someone else had told her that the Petitioner was in jail." (Dkt. 1, p. 16.) He claims that this testimony "formulate[d] in the jury's mind that he was a very dangerous person." (Id.)

In his federal habeas petition, Petitioner fails to identify this testimony. In his postconviction motion, he cited a portion of defense witness Lequisha Jefferson's testimony on cross-examination in which she appears to reference information obtained from Chanel Wilson. The prosecutor asked Jefferson about information supporting Petitioner's alibi:

> Q:   When was the first time that you became aware that the defendant was arrested for something that happened on August the 23rd, 2003?

---

[9] Shortly before this discussion, Petitioner stated that he understood the State made a plea offer for fifteen years in prison. (Dkt. 9, Ex. 2, Vol. I, pp. 7-8.) He also stated that he wanted to go to trial and declined an opportunity to discuss the matter with counsel. (Id., p. 8.)

A:      She told me about two weeks later the reason why he was in jail.

Q:      Two weeks after?

A:      I had talked to her.  She told me he was in jail.

(Dkt. 11, Ex. 2, Vol. III, p. 252; Dkt. 9, Ex. 9, p. 187.)

The state court rejected Petitioner's claim of ineffective assistance of counsel:

Defendant contends counsel should have moved for a mistrial when a witness
testified that Defendant was in jail.  Defendant argues that counsel's failure to do so
"left room for the jury to reach a conclusion that Defendant committed the instant
crime as the result of him being in jail, and that he was a violent person, because of
the fact that he was in jail."  However, the Court finds that, because a "reasonable
juror would know that [Defendant] had been in jail for at least some period of time
prior to trial," Defendant has failed to demonstrate prejudice.  *Snipes v. State*, 733
So.2d 1000 (Fla. 1999).  As such, Defendant is not entitled to relief on ground six.

(Dkt. 9, Ex. 10, p. 198.)

In Florida, "[a]n order granting mistrial is required only when the error upon which it rests

is so prejudicial as to vitiate the entire trial, making a mistrial necessary to ensure that the defendant

receives a fair trial."  *Dessaure v. State*, 891 So.2d 455, 464-65 (Fla. 2004) (citing *Cole v. State*, 701

So.2d 845, 853) (Fla. 1997)).  As Petitioner's claim rests upon whether applying this standard would

have resulted in a mistrial in his case, his argument involves a matter of state law.  A federal habeas

court must defer to a state court's interpretation of its own laws.  *See Bradshaw v. Richey*, 546 U.S.

74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas

corpus.").  *See also Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008)

("Although an ineffective assistance of counsel claim is a *federal* constitutional claim, which we

consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that

[counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's

Page 24 of  30

construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

In finding that Petitioner did not show prejudice, the state court has already determined that any motion for a mistrial based on the statements of this defense witness would have failed. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

As Petitioner has not demonstrated that the court would have granted his motion and declared a mistrial, he fails to show that he was prejudiced by counsel's performance. Accordingly, he does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts when it denied his claim. Ground One(F) provides no relief.

**Ground Two: Trial Court Error**

Petitioner argues that the state trial court's denial of his motion for judgment of acquittal based on insufficient evidence to sustain convictions for carjacking with a firearm and robbery with a firearm violates his Sixth and Fourteenth Amendment rights. Petitioner did not raise the federal dimension of the claim to the state court on direct appeal. (Dkt. 9, Ex. 3.) Therefore, he failed to exhaust his claim for purposes of federal habeas review. 28 U.S.C. § 2254(b)(1); *Picard*, 404 U.S. at 275-76. Notwithstanding, Petitioner is not entitled to relief.[10] Counsel moved for a judgment of

---

[10] A petitioner may be able to exhaust a federal claim challenging the sufficiency of the evidence by raising an analogous claim in state court in cases where the state court would use the same standard applied by federal courts. *See See Preston v. Sec'y, Florida Dep't of Corr.*, 785 F.3d 449, 461 (11th Cir. 2015) (citing *Mulnix v. Sec'y, Dep't of Corr.*,

acquittal on both counts:

> The State has failed to prove a prima facie case against Mr. Branton, specifically as to carjacking, and there is no evidence that Mr. Branton was a participant specifically in the robbery. My recollection of the testimony of Mr. James is that he identified someone that was present there. He has no conversations. The only actions that I recall Mr. James testifying to was that he felt that he was intimidated, I believe his words were, because the four individuals apparently got close to him or something to that effect. But I have no recollection of any evidence whatsoever that makes Mr. Branton a principal in any carjacking or any robbery. I think the evidence only gives rise to a possible grand theft motor vehicle because he did testify that Mr. Branton drove away in his vehicle without his consent. But I don't believe there is any evidence whatsoever to connect Mr. Branton to a carjacking, because there is obviously no testimony that he possessed or carried a firearm or deadly weapon. Mr. James was specific that that was the gentleman with the scar who he's identified as Mr. Preston [sic].
>
> There is no evidence - - no conversation between this defendant and the codefendant. There is no actions that I'm aware of that he testified specifically as to this defendant. And I would submit that as to carjacking, the only evidence of prima facie guilt would be as to grand theft motor vehicle.
>
> The same argument as to the robbery. There is no evidence that indicates that Mr. Branton was an active participant or participated in any way in the robbery other than being merely present at the scene and attempting to purchase clothes. So we ask the Court to grant a judgment of acquittal on the carjacking to grand theft motor vehicle on the robbery to dismiss that charge.

(Dkt. 9, Ex. 2, Vol. III, pp. 232-34.) The trial court rejected this motion, stating, "It's denied. There is a little problem with principal. You can argue obviously to the jury." (Id., p. 234.)

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970). The Supreme Court established the standard of review in a federal habeas corpus proceeding in which a petitioner challenges the sufficiency of the evidence:

> We hold that in a challenge to a state criminal conviction brought under 28 U.S.C.

---

254 Fed. App'x 763, 764-65 (11th Cir. 2007)). Petitioner did not specify the standard of review in his appellate brief. (Dkt. 9, Ex. 3.) In cases in which the evidence is not entirely circumstantial, Florida courts apply a standard of review identical to the federal standard. *Simmons v. State*, 934 So.2d 1100, 1111 (Fla. 2006).

§ 2254 – if the settled procedural prerequisites for the claim have otherwise been satisfied – the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 324 (1979). "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at trial established guilt beyond a reasonable doubt.'" Id. at 318-19 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)). "[T]he *Jackson* standard of review is '[e]qually applicable to direct or circumstantial evidence.'" *Martin v. Alabama*, 730 F.2d 721, 725 (11th Cir. 1984) (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1358 (11th Cir. 1982)). Sufficiency of the evidence claims are governed by the substantive elements of a criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16. If the record contains facts supporting conflicting inferences, the jury is presumed to have resolved those conflicts in favor of the State and against the defendant. *Id.* at 326.

To prove the offense of carjacking with a firearm, the State was required to show (1) Petitioner took a motor vehicle from the person or custody of Aaron James; (2) force, violence, assault, or putting in fear was used in the course of the taking; (3) the taking was with the intent to permanently or temporarily deprive James of his right to the vehicle or any benefit from it or to appropriate James' motor vehicle for Petitioner's own use or the use of any person not entitled to it; and (4) Petitioner carried a firearm in the course of committing the carjacking. (Dkt. 9, Ex. 1, Vol. II, pp. 225-26.) *See* § 812.133(1), (2)(a), Fla. Stat.; Fla. Std. Jury Inst. (Crim.) 15.2.

To prove the offense of robbery with a firearm, the State was required to establish that (1) Petitioner took money or property from the person or custody of James; (2) force, violence, assault, or putting in fear was used in the course of the taking; (3) the property was of some value; (4) the

taking was with the intent to permanently or temporarily deprive James of the right to the property

or any benefit from it or to appropriate James' property to Petitioner' own use or to the use of any

person not entitled to it; and (5) Petitioner carried a firearm in the course of committing the robbery.

(Dkt. 9, Ex. 1, Vol. II, pp. 228-29.)  *See* § 812.13(1), (2)(a), Fla. Stat; Fla. Std. Jury Inst. (Crim.)

15.1.[11]

The jury was also instructed on the principals theory:

If the defendant helped another person or persons commit a crime, the
defendant is a principal and must be treated as if he had done all the things the other
person or persons did if:
1. the defendant had a conscious intent that the criminal act be done and
2. the defendant did some act or said some word which was intended to
and which did incite, cause, encourage, assist, or advise the other
person or persons to actually commit the crime.
To be a principal, the defendant does not have to be present when the crime
is committed.

(Dkt. 9, Ex. 1, Vol. II, p. 231.)  *See* § 777.011, Fla. Stat.;  Fla. Std. Jury Inst. (Crim.) 3.5(a).

The Florida Supreme Court has further explained that "to be guilty as a principal for a crime

committed by another, the defendant 'must intend that the crime be committed and do some act to

assist the other person in actually committing the crime.'" *Jamerson v. Sec'y for Dep't of Corr.*, 410

F.3d 682, 689 (11th Cir. 2005) (quoting *Staten v. State*, 519 So.2d 622, 624 (Fla. 1988)).  However,

"'[n]either mere knowledge that an offense is being committed nor presence at the scene of the crime

and flight therefrom are sufficient to establish participation with the requisite criminal intent.'"

*Sanders v. State*, 563 So.2d 781, 782 (Fla. 1st DCA 1990) (quoting *Saffor v. State*, 558 So.2d 69,

---

[11] The jury was instructed with regard to both carjacking and robbery that the taking must be by the use of force
or violence or by assault so as to overcome the resistance of the victim, or by putting the victim in fear so that the victim
does not resist; that the law does not require the victim to resist to any particular extent or to actually physical resist if
the circumstances are such that the victim is placed in fear of death or great bodily harm he does resist; and that unless
prevented by fear, however, there must be some resistance to make the taking one done by force or violence.  (Dkt. 9,
Ex. 1, Vol. II, pp. 225, 228.)

71 (Fla. 1st DCA 1990)).

Furthermore, under the principal theory, the State could establish the element of carrying a firearm based on Pressley carrying a firearm during the commission of the offenses.  *See Lopez v. State*, 833 So.2d 283, 284 (Fla. 5th DCA 2002) ("We affirm Lopez's convictions for carjacking with a firearm and robbery with a firearm. . . . The law of principals allows Lopez to be convicted of the main offenses regardless of whether he personally possessed a firearm.");  *Jones v. State*, 648 So.2d 1210, 1211 (Fla. 4th DCA 1995) ("[I]f any one participant in a robbery carried a firearm during the commission of the crime, all of the participants are guilty as principals.").

James' testimony reflects that all four men arrived at the agreed-upon location at the same time and looked at clothes in James' car.  Pressley pointed the gun at James, demanded his wallet and keys, and told him to get on his knees.  All of the men physically closed in around him.  Without providing any instruction, Pressley gave the car keys to Petitioner, who drove away in James' car.  About $200 in cash was in James' wallet, and his car contained approximately $9,000 worth of clothing.  James further testified that he believed the gun would be used, that he felt some degree of intimidation, and indicated that having the gun pointed at him was a frightening experience.

Petitioner fails to establish that, under these circumstances, no rational trier of fact could have found proof of guilt beyond a reasonable doubt.  Accordingly, he does not meet the *Jackson* standard.  Thus, Petitioner is not entitled to relief on Ground Two.

It is therefore

**ORDERED** that the Petition for Writ of Habeas Corpus (Dkt. 1) is **DENIED**.  The Clerk shall enter judgment against Petitioner and close this case.

It is further **ORDERED** that Petitioner is not entitled to a certificate of appealability (COA).

A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(l). A district court must first issue a COA. *Id.* Petitioner is only entitled to a COA if he demonstrates that reasonable jurists would find debatable whether the Court's procedural ruling was correct and whether the § 2254 petition stated "a valid claim of the denial of a constitutional right." *Id.; Slack* v. *McDaniel,* 529 U.S. 473, 484 (2000). To make a substantial showing of the denial of a constitutional right, Petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,'" *Tennard* v. *Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack,* 529 U.S. at 484), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El* v. *Cockrell,* 537 U.S. 322, 335-36 (2003) *(quoting Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)). Petitioner cannot make the requisite showing because he cannot demonstrate that reasonable jurists would debate whether the Court's procedural rulings were correct, or whether the petition stated a substantial denial of a constitutional right. And because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

**ORDERED** in Tampa, Florida, on ___August 12th___, 2015.

JAMES D. WHITTEMORE
United States District Judge

SA:mh
Copy to:
*Pro se* Petitioner
Counsel of Record